IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| MEDSHAPE, INC., TRILLIANT SURGICAL LLC, (d/b/a ENOVIS FOOT AND ANKLE), and ENCORE MEDICAL, L.P., <br><br> Plaintiffs, <br><br> v. <br><br> ARTHREX, INC. and ARTHREX MANUFACTURING, INC. <br><br> Defendants. | Case No. 6:24-cv-00151-DTG |

## CLAIM CONSTRUCTION ORDER

Pending before the Court is a claim construction dispute involving two terms from a single patent. The parties fully briefed their positions, the Court provided preliminary constructions, and the Court held a claim construction hearing on December 5, 2024. After hearing arguments of counsel, the Court took the construction of one term, "bone fragment," under advisement and confirmed that its preliminary construction of the "substantially in an austenitic phase" terms would be adopted as the final construction. Dkt. No. 64 at 55:5-17. This order provides final constructions for both terms as follows.

After the claim construction hearing, an additional dispute arose over whether the steps of claim 1 must be performed in a specific order. The defendant, Arthrex, Inc., moved for an additional claim construction to resolve this dispute. Dkt. No. 68. That motion was opposed and has been fully briefed, including a sur-reply. Dkt. Nos. 79, 81, 88. The Court finds a hearing on this additional dispute unnecessary and **GRANTS** this additional motion (Dkt. No. 68) for the reasons that follow.

I.     **CLAIM CONSTRUCTION**

Claim construction starts with the general rule that claim terms are construed according to their ordinary meaning as understood by a person of skill in the relevant art. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc); *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014) (holding that there is a heavy presumption in favor of the ordinary meaning) *cert. granted, judgment vacated,* 135 S. Ct. 1846 (2015). To determine the construction, courts start by considering the intrinsic evidence, which includes the claims, specification, and prosecution history. *Phillips*, 415 F.3d at 1313-14. Extrinsic evidence—such as technical dictionaries, treatises, and expert testimony—can also be useful, but it is given less weight than the intrinsic evidence. *Phillips*, 415 F.3d at 1317-18 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862).

There are two exceptions to the general rule in favor of ordinary meaning. These exceptions are "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution." *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014) (quoting *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)); *see also GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) ("[T]he specification and prosecution history only compel departure from the plain meaning in two instances: lexicography and disavowal."). The standards for finding lexicography or disavowal are "exacting" with both requiring clear evidence. *GE Lighting Sols.*, 750 F.3d at 1309. Proving disavowal requires clear and unmistakable evidence. *Golden Bridge Tech., Inc.*, 758 F.3d at 1365.

Patent claims must also particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112, ¶ 2. A claim, when viewed in light of the intrinsic evidence, must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). If it does not, the claim fails § 112, ¶ 2 and is invalid as indefinite. *Id.* at 901. Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the application for the patent was filed. *Id.* at 911. As it is a challenge to the validity of a patent, proof of indefiniteness must be shown by clear and convincing evidence. *BASF Corp. v. Johnson Matthey Inc.,* 875 F.3d 1360, 1365 (Fed. Cir. 2017).

## II.   BACKGROUND

This patent infringement case involves two asserted patents. One asserted patent is U.S. Patent No. 7,985,222, which is titled, "Osteosynthetic Implants and Methods of Use and Manufacture." Dkt. No. 35-1. The other asserted patent is U.S. Patent No. 8,491,583, which is titled, "Intramedullary Medical Device and Methods of Use and Manufacture." Dkt. No. 35-2.

All of the claim construction disputes involve the '222 Patent. That patent covers an invention for "bone fracture fixation devices, systems and methods of use and manufacture." Dkt. No. 35-1 at 2 ("ABSTRACT"). The '222 Patent contains one independent claim, which reads as follows:

> 1. A method, comprising:
>
> (a) inserting a bone device having a longitudinal axis into a first bone fragment and a second bone fragment, wherein the inserting causes a first portion of the bone device to contact the first bone fragment and causes a second portion of the bone device to contact the second bone fragment, the second portion different from the first portion;
>
> (b) wherein the bone device comprises a shape memory alloy having an austenite finish temperature;

    (c) creating in a responsive portion of the bone device at least a partial transformation into a stress-induced martensitic phase via stretching the responsive portion along the longitudinal axis;

    (d) after performing the stretching, fixing the second portion of the bone device to the second bone fragment; and

    (e) wherein the creating is performed at a temperature greater than the austenite finish temperature of the shape memory alloy.

Dkt. No. 35-1 at 19 (col 12, lines 31-49) (alphabetic headings added for reference). The '222 Patent also contains nine dependent claims. *Id*. at 19-20 (Claims 2 - 10).

Based on these claims the parties have three disputes. First, they dispute the plain and ordinary meaning of "bone fragment" in claims 1, 3, 4, 7, and 8. Next, they dispute whether the "substantially in an austenitic phase" terms of claims 2, 7, and 8 are indefinite. Finally, they dispute whether specific steps of the method in claim 1 must be performed in a specific order. The Court addresses each dispute as follows.

## III. LEVEL OF ORDINARY SKILL IN THE ART

It is well established that patents are interpreted from the perspective of one of ordinary skill in the art ("POSITA"). *See Phillips*, 415 F.3d at 1313 ("[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."). The Federal Circuit has advised that the "[f]actors that may be considered in determining the level of skill in the art include: (1) the educational level of the inventors; (2) the type of problems encountered in the art; (3) prior art solutions to those problems; (4) the rapidity with which innovations are made; (5) sophistication of the technology; and (6) education level of active workers in the field." *Env'tl Designs, Ltd. v. Union Oil Co. of Cal.*, 713 F.2d 693, 696 (Fed. Cir. 1983). "These factors are not exhaustive but are merely a guide to determining the level of ordinary skill in the art." *Daiichi Sankyo Co. Ltd. v. Apotex, Inc.*, 501 F.3d 1254, 1256

(Fed. Cir. 2007).

Both parties offer a definition of a person of skill in the art for the invention of the '222 Patent. The defendant—through its expert—contends that such a person would be either "1. an orthopedic or podiatric surgeon, having an M.D. or a Doctorate of Podiatric Medicine (DPM), having at least two years of experience in practice using and/or designing implantable medical devices, and having knowledge of, or experience with, medical devices utilizing shape memory alloys; or 2. an engineer, or similar professional, having a B.S. or equivalent degree in one of biomedical engineering, biomechanical engineering, mechanical engineering, materials science, or a similar discipline and at least three to five years of experience researching, designing, developing, or testing (i) implantable medical devices and/or (ii) products using shape memory alloys; and having knowledge of, or experience with shape memory alloys in the context of medical devices." Dkt. No. 48-3 (Ex. 2) ¶¶ 18-19. The plaintiffs—through their expert—contend that a person of ordinary skill is "an engineer, or similar professional, having a B.S. or equivalent degree in one of biomedical engineering, biomechanical engineering, mechanical engineering, materials science and engineering, or a similar discipline, or an orthopedic or podiatric surgeon, having an M.D. or a Doctorate of Podiatric Medicine (DPM), having at least three years of experience designing, developing, or using implantable medical devices comprised of shape memory alloys and/or implantable medical devices utilizing compression for fusion or fracture fixation." Dkt. No. 51-2 (Ex. 1) ¶¶ 23-24. Both parties agree that graduate studies or specific training can replace some of the experience. *Id*.; Dkt. 48-3 ¶¶ 18-19.

Each party proposes the same education for a person of skill and vary only on the years of proposed experience. The defendant contends that doctors—M.D. or of Podiatric Medicine—need only two years of experience. Aside from that, both parties agree that at least three years of

experience are required for all other educational backgrounds. Despite these differences, neither party contends that the claim constructions will change based on the proposed person of skill in the art. Dkt. No. 64, 28:8-21 (the defendant's counsel acknowledging that at least most of the claim constructions do not turn on the qualifications of a person of ordinary skill in the art).

As neither party contends that the proposed definition of a person of skill in the art makes a difference in claim construction, the Court will adopt the plaintiffs' proposal. The Court finds that it captures the relevant art and experience for the '222 Patent. The Court holds that a person of ordinary skill in the art for the '222 Patent is **an engineer, or similar professional, having a B.S. or equivalent degree in one of biomedical engineering, biomechanical engineering, mechanical engineering, materials science and engineering, or a similar discipline, or an orthopedic or podiatric surgeon, having an M.D. or a Doctorate of Podiatric Medicine (DPM), having at least three years of experience designing, developing, or using implantable medical devices comprised of shape memory alloys and/or implantable medical devices utilizing compression for fusion or fracture fixation.**

IV.     CONSTRUCTION OF DISPUTED TERMS FOR THE ASSERTED PATENTS

The parties dispute the meaning and scope of two terms or phrases and whether the steps of a claim must be performed in order. The claim terms were briefed and argued at the claim construction hearing. The more recent dispute regarding whether claim 1 requires its steps to be performed in a specific order was raised in later briefing. The Court finds that an additional hearing is unnecessary and addresses each dispute below.

A.      "bone fragment" ('222 Patent Claims 1, 3, 4, 7 and 8)"

| The Plaintiff's Proposal | The Defendant's Proposal | Preliminary Construction |
|---|---|---|
| Plain and ordinary meaning | Plain and ordinary meaning, which is "a piece of bone broken from a larger bone" | Plain and Ordinary Meaning, which includes a piece of bone broken from a larger bone as well as a standalone bone. |

The dispute over this term is over what qualifies as the plain and ordinary meaning. The defendant contends that "bone fragment" cannot be a fully formed bone. The plaintiffs disagrees and contends that the defendant is attempting to improperly narrow the claim.

The defendant relies on intrinsic and extrinsic evidence to support its definition of the plain and ordinary meaning of bone fragment. It points to multiple places in the specification where the word "fragment" is used to describe a portion of a bone, not a whole bone. Dkt. No. 48 at 7. Each of the five times "fragment" appears in the '222 patent specification, it is used to describe a piece of a bone that has broken off a larger bone. Dkt. No. 48-2 at 1:50-52, 1:54-58, 4:19-25, 4:36-40, 5:45-48, 5:52-56. The defendant also presents extrinsic evidence that it contends support the common and understood definition of a fragment as a piece broken off a larger entity. Dkt. Nos. 48-4, 48-5, 48-6, 48-7, 48-8, 48-9. Finally, the defendant points to the plaintiffs' use of "bone element" during the prosecution of the '222 Patent as evidence that the patentee knew how to claim something other than a "bone fragment," when it wanted to claim something other than a broken part of a larger bone. Dkt. No. 48-12 at 55-61 (2/14/07 Preliminary Amendment), 7-12 (3/22/11 Response, cancelling claims reciting "a first bone element" and "a second bone element."). The defendant contends that all of this demonstrates that a person of ordinary skill in the art would understand that a bone fragment is something other than a whole, unbroken bone. The defendant contends that a standalone bone is not a bone fragment but that all the pieces of a fractured or broken bone are bone fragments. Dkt. No. 48 at

5 n.2. The defendant argues that its construction is entirely consistent with the purpose of the invention being the repair of fractured bones. *Id*. at 8-9 (citing Ex. 1 at 1:15-17; 1:31-32; 1:61-62; 4:18-21; 5:45-48; Figs. 2A-C). The defendant notes in its reply that even the plaintiffs' non-technical dictionaries support its construction. Dkt. No. 53 at 2. It also contends that the plaintiffs misread the '222 Patent as defining fragments as including fusion of separate bones, when instead the patent describes fractures and fusions as distinct but covered by the invention. *Id*. at 3.

The plaintiffs dispute this construction. They contend that the defendant is attempting to narrow this claim term by improperly importing limitations into it. Instead, the plaintiffs contend that a person of ordinary skill in the art would understand that "bone fragment" refers to a piece of bone and may be either "a piece broken from a larger bone, such as a fracture, or an entire bone. Dkt. No. 51 at 4. The plaintiffs note that none of the claims use the words "fracture" or "fracture fixation." *Id.* at 6 (citing Dkt. No. 48-2 cl. 1). Instead, the plaintiffs point to the portion of the specification explaining that the claimed methods can be used to repair fractured bone and to create a bony fusion. *Id*. at 6-7; Dkt. 48-2 at 1:65-2:9 (mentioning bone fracture repair and bony fusions); 8:32-42, 8:59-9:9, 9:10-21, 9:45-55. Additionally, they point to figure 8 of the '222 Patent, which discloses an elongated element passing through three distinct bones, resulting in a fusion. Dkt. No. 51 at 7. The plaintiffs assert that the defendant's construction would exclude this disclosed embodiment and would instead improperly limit the claims to one embodiment—fixation of a fractured bone. The plaintiffs contend that such intrinsic evidence in the specification should control over the extrinsic medical definitions that the defendant cites.

This is not a case of lexicography or disavowal. The defendant is not arguing that the patentee acted as its own lexicographer by providing a unique definition of "bone fragment." The

defendant is also not arguing that the patentee disavowed some aspect of the plain and ordinary meaning. Rather, the parties are disputing what is the plain and ordinary meaning of "bone fragment." *See* Dkt. No. 48 at 7.

Figures 2A and 8 provide good examples of the patentee's acknowledgement of the difference between a bone and a bone fragment. When describing the portions of the bone depicted in Figure 2A, the patentee identified them as "bone fragments 220." Dkt. No. 48-2 at 5:50-52. When referring to an entire bone, such as in Figure 8, the patent refers to the entire, standalone bone as simply "a bone 850." Dkt. No. 48-2 at 8:43-44. This intrinsic evidence indicates that a bone fragment is something other than a whole bone.

The plaintiffs' use of bone element and bone fragment during the patent prosecution is further evidence that the patentee recognized a distinction between a bone fragment and a whole bone. The patent discloses that the invention may be used for fractures and fusions. The patentee also attempted to capture both embodiments by a claim directed to bone elements and a claim directed to bone fragments. Dkt. No. 48-12 at 55-61. The original claim 27 used the term bone element while original claim 47 (now claim 1) used the term bone fragment. *Id*. The patentee's use of two distinct terms in the claims indicates those terms had distinct meanings, and a bone element cannot be the same thing as a bone fragment. This is further reinforced by Figure 8's reference to a standalone bone as "a bone 850" and Figure 2A's reference to a "bone fragments 220" described above. *InnovaPure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004) (stating that a patentee's use of different terms infers those terms have different meanings).

The Court further agrees with the defendant that a patent claim is not required to cover every invention disclosed in the patent. *Baran v. Medical Device Techs., Inc.*, 616 F.3d 1309,

1316 (Fed. Cir. 2010); *see also Intamin Ltd. v. Magnetar Techs., Corp.*, 483 F.3d 1328, 1336–37 (Fed. Cir. 2007) ("[A] claim need not cover all embodiments."). Simply because the plaintiffs disclosed how the invention applies to bony fusions, does not require the term "bone fragment" to be interpreted to cover independent bones being fused together. As a result, the Court sees no support for reading bone fusions into the ordinary meaning of bone fragment. Finally, the Court agrees with the defendant that the unrelated patent cited by plaintiffs carries no weight in the analysis. *Goldenberg v. Cytogen Inc.*, 373 F.3d 1158, 1167–68 (Fed. Cir. 2004) (finding statements in or while prosecuting another patent are irrelevant to claim construction "[a]bsent a formal relationship or incorporation" into the patent at issue).

After careful consideration, the Court adopts the defendant's proposed construction of **"bone fragment" as having the plain and ordinary meaning, which is "a piece of bone broken from a larger bone."**

**V.     "stretching the bone device is performed with the bone device substantially in an austenitic phase" (Claim 2) / "inserting the bone device into the second bone fragment is performed while the responsive portion is substantially in an austenitic phase" (Claim 7) / "inserting the bone device into the first bone fragment is performed while the responsive portion is substantially in an austenitic phase" (Claims 8)**

| The Plaintiff's Proposal | The Defendant's Proposal | Preliminary Construction |
|---|---|---|
| Not indefinite; plain and ordinary meaning | Indefinite | Not indefinite; Plain and Ordinary meaning. |

These terms come from three claims—claims 2, 7, and 8—in the '222 Patent. Each of these claims depend from claim 1, and each requires the bone device or the responsive portion of the bone device to be "substantially in an austenitic phase." Dkt. No. 48-2 at 19-20. The dispute is whether the requirement for "substantially in an austenitic phase" is indefinite. Finding a term indefinite requires that term to fail to explain the scope of the invention to a person of ordinary skill in the art with reasonable certainty. *Nautilis Inv. v. Biosig Instruments, Inc.*, 572 U.S. 898,

901 (2014).

The defendant contends that these terms are indefinite for two reasons. First, the defendant contends that the phrase substantially is a term of degree with no boundary provided by the '222 Patent. Dkt. No. 48 at 12. Second, the defendant contends that the '222 Patent fails to provide guidance about when and how to measure the amount of austenite bone device. *Id*. at 15.

The defendant relies on several sources to argue that "substantially" is an indefinite term of degree. First, the defendant points out that while the '222 Patent describes austenite phase, it never describes a substantially austenite phase and only uses the term substantially in a way unrelated to an austenite phase. *See* Dkt. No. 48 at 12 (citing 48-2 at 8:10-11). The defendant provided an expert declaration contending that there is no guidance or objective boundaries for when a device is substantially in an austenitic phase. *Id*. at 12-13 (citing Dkt. No. 48-3, ¶¶ 43-45). The defendant also contends that the holdings in *Datanet* and *Brazarba Corp.* support the indefiniteness of the term "substantially." *Datanet LLC v. Dropbox, Inc.*, Case No. 6:22-cv-1142-OLG-DTG, 2023 WL 7545234, at *11 (W.D. Tex. Nov. 10, 2023) (holding that a patent failed to provide guidance for the boundaries of the term "substantially"); *Brazarba Corp. v. Ce Soir Lingerie Co., Inc.*, Case No. 1:18-cv-683-RP, 2019 WL 13136348, at *7 (W.D. Tex. Aug. 15, 2019) (finding a patent indefinite for failing to provide boundaries for what qualified as a "substantial area.").

The defendant again relies on the declaration of its expert to contend the terms are indefinite because they do not describe how to measure the amount of austinite. The expert opines that there are no practical ways to measure the amount of austenite and that the patent fails to provide any. Dkt. No. 48 at 15-16. The defendant cites several opinions in support of such a shortcoming. *Id*. at 16 (citing *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1345

(Fed. Cir. 2015); *Katana Silicon Techs. LLC v. GlobalFoundaries, Inc.*, Case No. 1:22-cv-00852-RP, Dkt. No. 79 at 12-13 (W.D. Tex. Sept. 29, 2023).

The defendant also relies on its expert's declaration to argue that the terms are indefinite because they fail explain when to measure the austenitic phase. As noted by the defendant, all three claims—2, 7, and 8—are method claims that require the presence of "substantially in an austenitic phase" during a particular step of the method. Dkt. No. 48 at 17. The defendant then points to its expert's declaration to support the argument that the amount of material in an austenitic phase will vary based on whether it is measured before, during, or after stretching. *Id*. (citing Dkt. No. 48-3 ¶¶ 50-51, 53-58).

Finally, the defendant contends these terms are indefinite in claims 7 and 8, because they fail to specifically identify where to measure the "responsive portion." Dkt. No. 48 at 18. This alleged confusion is allegedly supported by the different responsive portions identified in the '222 Patent specification. *Id*. (citing 48-2 at 2:23-25, 2:52, 2:65-66; 4:52-56). The defendant again turns to the declaration of its expert to explain how the confusion over the responsive portion makes the term indefinite. Dkt. No. 48 at 19-20 (providing examples of three potential responsive portions applied to Fig. 1A).

The plaintiffs obviously disagree and contend that there is no indefiniteness created by the phrase "substantially in an austenitic phase." The plaintiffs contend that it is a definite term of approximation as evidence by case law. Dkt. No. 51 at 13 (citing *Dana Corp. v. Am. Axle & Mfg., Inc.*, 110 F. App'x 871, 876 (Fed. Cir. 2004) (holding that "[t]he term 'substantially' is commonly used by claim drafters to indicate approximation."); *Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1360 (Fed. Cir. 2003)). Given the claim's functional requirements and purpose of the invention, the plaintiffs contend the phrase is not indefinite. *Id*. at 14 (describing

this term as a functional limitation and providing a description). As noted by the plaintiffs, the purpose of the invention is to create compression and promote bone growth. Dkt. No. 51 at 14-15 (citing the '222 Patent at 2:58-60, 5:1-2, 8:37-39, 9:57-10:16).

The plaintiffs also provide an expert declaration to support their position. The plaintiffs' expert contends that to achieve the desired compression and healing of the invention, a person of ordinary skill in the art would understand that the bone device would have to remain primarily in the austenitic phase. This, the plaintiffs contend would cause a stretched bone device to try to return to its original shape and create the necessary compression. *Id*. at 15 (citing Dkt. No. 51-1 ¶¶ 30-44, 57-62). The plaintiffs rely on their expert to contend that the crystal structure of austenitic materials such as the exemplary nitinol, referenced in the patent, are never prefect or 100% uniform. *Id*. at 15-16. The plaintiffs also rely on their expert and the specification to rebut the defendant's arguments over the location of the responsive portion. Dkt. No. 51 at 17 (citing Dkt. No. 48-2, 6:39-46, 6:58-7:3; Dkt. No. 51-1 ¶¶ 65-67, 77-79). Based on all of this and case law, the plaintiffs contend that a person of ordinary skill in the art would understand the objective and practical boundaries of this term. *Id*. at 16 (citing Dkt. No. 51-1 and *Vascular Sols. LLC v. Medtronic, Inc.*, Case No. 24-1398, 2024 WL 4195130, at *7 (Fed. Cir. Sept. 16, 2024).

The Court finds that the "substantially in an austenitic phase" terms are not indefinite and should be given their plain and ordinary meaning. While indefiniteness is a legal conclusion, invalidity must still be established by clear and convincing evidence. *BASF Corp. v. Johnson Matthey Inc.,* 875 F.3d at 1365. The defendant relies primarily on the extrinsic evidence of its expert's declaration. Dkt. No. 48-3. That declaration is rebutted by the plaintiffs' expert's declaration. Dkt. No. 51-2. Because both experts are well-qualified and there is no meaningful dispute over what qualifies as a person of ordinary skill in the art, the Court finds neither expert

particularly persuasive considering the intrinsic record. The Court does find, however, that the plaintiffs' expert's explanation of the patented invention to be more closely aligned to the invention disclosed in the '222 Patent specification.

The intrinsic record demonstrates that these terms are not indefinite. As noted in the specification, "the present invention help[s] maintain compressive loads across the fracture site." Dkt. No. 48-2 at 2:7-8. The patent describes how the exemplar material, Nitinol, can provide compression by stretching the material to induce "formation of stress induced martensite" and then releasing it to "induce formation of the austenite phase" that results in the material attempting to return to its original shape. *Id*. at 5:9-16. The specification also details how a physician can calculate the desired cross section of an exemplar bone device and how the responsive element can be designed to localize the stress and elongation necessary to achieve the invention's goals. *Id*. at 9:57-10:16. The Court agrees with the plaintiffs' expert that, given the goals of the invention, a person of ordinary skill in the art would understand these claim terms and that the defendant's arguments about the precise amount or location of the austenitic phase are misplaced. Dkt. No. 51-2, ¶¶ 60-62, 65-67, 77-79. The Court finds that a person of ordinary skill in the art would understand that a precise percentage of austinite is not required. Such a person would also understand that that the claims do not require measuring the exact location of the responsive zone, but rather that the bone device be designed with a responsive portion where the stretching—stress-induced martensite—would be created. *Id*.

The Court believes that *Vascular Solutions* is particularly analogous to the present case. *Vascular Solns. LLC v. Medtronic, Inc.*, 117 F.4th 1361 (Fed. Cir. Sept. 16, 2024). There the Federal Circuit explained that when used with a functional limitation, the phrase "substantially rigid" was not indefinite because a person of ordinary skill in the art would understand that the

rigidity required was that necessary to achieve the claimed function—advancing a catheter within a guide. *Id*. at 1370. Similarly, the claims at issue require "substantially in an austenitic phase" so that the '222 Patent's function of creating compression is achieved.

The Court holds that the terms "stretching the bone device is performed with the bone device substantially in an austenitic phase" of Claim 2; "inserting the bone device into the second bone fragment is performed while the responsive portion is substantially in an austenitic phase" of Claim 7; and "inserting the bone device into the first bone fragment is performed while the responsive portion is substantially in an austenitic phase" of Claim 8 **are not indefinite and should be given their plain and ordinary meaning**.

## VI. Whether steps 1(a) and 1(c) of claim 1 must be performed in a particular order.

Finally, the Court turns to the parties' more-recent claim construction dispute—whether the elements of claim 1 must be performed in a particular order. The particular elements disputed are designated 1(a) and 1(c) by the parties and read as follows:

> (a) inserting a bone device having a longitudinal axis into a first bone fragment and a second bone fragment, wherein the inserting causes a first portion of the bone device to contact the first bone fragment and causes a second portion of the bone device to contact the second bone fragment, the second portion different from the first portion;
>
> …
>
> (c) creating in a responsive portion of the bone device at least a partial transformation into a stress-induced martensitic phase via stretching the responsive portion along the longitudinal axis.

Dkt. No. 48-2 at 12:31-44.

| The Plaintiff's Proposal | The Defendant's Proposal | Preliminary Construction |
|---|---|---|
| plain and ordinary meaning applies and requires some insertion of step 1(a) be performed prior to stretching in step 1(c) | step 1(c) need not be performed only after step 1(a) | None provided as the issue was raised after the claim construction hearing. |

After the claim construction hearing, the defendant filed a motion for additional claim

construction. Dkt. No. 68. The defendant contends this issue first arose as part of the plaintiffs' attempt to avoid institution of an *inter partes* review. *Id*. at 1. The dispute specifically involves whether steps 1(a) and 1(c) need to be performed in any order. First, the defendant contends that grammatically no order is required. *Id*. at 5-7. It also contends that requiring a specific order contradicts the specification, which fails to disclose any stretching being done after the insertion process. *Id*. at 7-8 (citing 48-2 at 6:46-56 (describing elongation before affixing the device to the fracture site); 6:12-15; Fig. 7A and 7B, 7:32-44). The defendant then claims that the proposed order of steps was specifically rejected during patent prosecution. *Id*. at 8-10 (citing Dkt. No. 48-12 (where the applicant was faced with a written description rejection and deleted claim language requiring stretching after insertion)). Finally, the defendant contends that the plaintiffs waived this argument by failing to raise it during claim construction, and as such the general rule that no order is required should prevail. Dkt. No. 68 at 10-11 (citing *Mformation Techs., Inc. v. Rsch. In Motion Ltd.*, 764 F.3d 1392, 1398 (Fed. Cir. 2014); *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1345 (Fed. Cir. 2008)).

The plaintiffs on the other hand contend that the ordering of the steps was clear all along. The plaintiffs point to prior briefing and argument where they contend the order of steps was clearly argued. Considering that, the plaintiffs argue that it was the defendant who hid this claim dispute. Dkt. No. 79 at 1. The plaintiffs also point to their Complaint and the accused device, their preliminary infringement contentions, the claim construction briefing, and their argument at the claim construction hearing as evidence that they have always clearly contended an order of steps is required. *Id*. at 2-3. The plaintiffs claim that the defendant's failure to raise the dispute in light of all those arguments amounts to waiver by the defendant. *Id*. at 5. The plaintiffs also assert that grammar and antecedent basis impose an order on the steps. *Id*. at 7 (citing *Medtronic,*

*Inc. v. Teleflex Life Scis. Ltd.*, 2024 WL 1208642, at *3 (Fed. Cir. Mar. 21, 2024)). The plaintiffs contend that failure to perform the steps in order would prevent the invention from working. *Id*. at 8-9. The plaintiffs also rely on their expert's declaration and the need for the invention to work within the human body—which can only be after insertion—as further evidence of a required order. *Id*. at 10 (citing 51-2, ¶¶ 49-50, 62). The specification, according to the plaintiffs, confirms that the steps of claim 1 must occur in order. *Id*. at 12-15. Finally, the plaintiffs rely on the prosecution history and an argument that shape memory alloys having pseudo-elasticity at body temperature as further evidence of an order to the steps. *Id*. at 15-16.

      The Court is first persuaded that the defendant did not waive this claim construction issue. The Court fails to see how the plaintiffs' accusations against a product that provides a specific order of steps would impliedly limit the scope of claim 1. Neither party identifies a clear statement of including or excluding a specific order of steps that should have put the parties on notice that it might become an issue. For example, the plaintiffs contend that their complaint accused a product that required insertion and then stretching, but they fail to explain how this would indicate to the defendant that anything happening in another order was excluded. Dkt. No. 79 at 2. The defendant on the other hand notes that in response to an interrogatory, the plaintiffs identified their DynaNail product—which is stretched and then inserted—as practicing the '222 Patent. Dkt. No. 81 at 1-2; Dkt. No. 81-2 at 19-20; Dkt. No. 81-3 at 19-20. Neither party has identified any situation where the party clearly identified its contention that the steps of claim 1 must proceed in a specific order or to facts that clearly demonstrate the party should have raised this issue earlier such as in *Polaris PowerLED*. *Compare Polaris PowerLED Techs., LLC v. Samsung Electronics Am., Inc.*, Civ. No. 2:22-cv-00469-JRG-RSP, 2024 WL 5098226, *2 (E.D. Tex. Dec. 12, 2024) (citation omitted). As such, the Court finds that neither party waived its right

to raise this issue and the Court addresses it.

The Court turns to whether claim element 1(c), the stretching step, must be performed after claim element 1(a), the inserting step. The Court starts with the general rule that unless the method expressly recites an order, the steps of a method can be performed in any order. *Medtronic, Inv. v. Teleflex Life Sciences Ltd.*, Case No. 2022-1605, 2024 WL 1208642, *3 (Fed. Cir. Mar. 21, 2024) (citing *Mformation Techs., Inc. v. Rsch. in Motion, Ltd.*, 764 F.3d 1392, 1398 (Fed. Cir. 2014)). This general rule can be overcome by logic, grammar, the specification, and sometimes by antecedent basis. *Id.*, at *3-4 (finding the antecedent basis and the overall function of the claim required the steps of the method claim to be performed in order).

The Court first considers the language of claim 1. As both parties acknowledge, claim element 1(d) expressly requires the fixing step to occur "after performing the stretching." Dkt. No. 48-2 at 12:45. This is an unequivocal demonstration of the patentee's ability to claim a specific order when it is desired, yet no such requirement is included in claim element 1(c), the stretching step. *See Achates Reference Publ'g, Inc. v. Symantec Corp.*, Case No. 2:11-cv-294-JRG-RSP, 2013 WL 2357172, at *8 (E.D. Tex. Jan. 3, 2013) (rejecting the antecedent basis as creating a specific order and holding that by claiming a specific order in one step indicates the patentee intentionally omitted an order from other steps to have a broader scope).

The specification also supports the defendant. It describes stretching of the bone device before and during the insertion process. Dkt. No. 48-2 at 6:12-15 (during insertion), 6:49-56 (before insertion). The plaintiffs contend that this later example from column 6 demonstrates that the device is partially inserted, stretched, and then fixed. Dkt. No. 79 at 14-15. The Court disagrees with the plaintiffs' reading of this portion of the specification. Rather, the Court understands this portion of the specification to describe a bone plate that can be held in an

elongated state by an external clamp, then affixed to the bone, and then the clamp removed. Dkt. No. 48-2 at 6: 49-56. When considered with the example disclosed in connection with Figures 2A, 2B, and 2C, the patent discloses one example of a bone device that is a plate and is stretched before insertion and one example of a bone device that is a screw and is stretched after insertion.

The Court also finds the dependent claims somewhat helpful. The plaintiffs point to dependent claims 3, 7, and 8 as potential evidence of a required order of steps. Dkt. No. 79 at 11-12. Claim 3 adds the limitation that the device must be fixed to the first bone fragment before stretching. Dkt. No. 48-2 at 12:53-54. Claim 7 and 8 simply require a specific condition of the bone device while the insertion step of claim 1 occurs. *Id*. at 13:1-6. These three dependent claims indicate that the independent claim must have a broader scope. *TecSec, Inc. v. Adobe Sys. Inc.*, 658 F. App'x 570, 577 (Fed. Cir. 2016); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (holding that the additional limitations in a dependent claim creates a presumption that the independent claim does not have that limitation). These dependent claims indicate that claim 1 has a broader scope, and they indicate that when the patentee wanted a specific order of steps it included temporal language such as after, before, and while. Such language is missing from every step of claim 1, except claim 1(d). This omission combined with the example of a bone plate stretched pre-insertion (Dkt. No. 48-2 at 6:49-56) leads the Court to the conclusion that had the patentee intended step 1(c) to be performed only after step 1(a), it would have said so. As it did not, the Court concludes **that there is no required order for claim elements 1(a) and 1(c), and they may be performed in any order**—unlike element 1(d).

## VII. CONCLUSION

Based on the foregoing, the Court issues the following constructions for the contested claim language and holds as follows:

"bone fragment" is given its plain and ordinary meaning, which is "a piece of bone broken from a larger bone;"

"stretching the bone device is performed with the bone device substantially in an austenitic phase" of Claim 2; "inserting the bone device into the second bone fragment is performed while the responsive portion is substantially in an austenitic phase" of Claim 7; and "inserting the bone device into the first bone fragment is performed while the responsive portion is substantially in an austenitic phase" of Claim 8 are not indefinite and should be given their plain and ordinary meaning; and

Claim 1 steps 1(a) and 1(c) have no required order and may be performed in any order.

**SIGNED** this 29th day of August, 2025.

_____
DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE